# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER BILODEAU, individually and on behalf of all others similarly situated,<br><br>        *Plaintiff*,<br><br>    *v.*<br><br>CAPITAL INTELLECT, INC., d/b/a WINFERNO SOFTWARE, a Delaware corporation,<br><br>        *Defendant*. | **CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Jennifer Bilodeau ("Bilodeau" or "Plaintiff"), brings this Class Action Complaint ("Complaint") against Defendant Capital Intellect, Inc. ("Capital Intellect" or "Defendant") based upon Defendant's practice of defrauding consumers through the deceptive design and sale of one of its software products. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.      Capital Intellect is a Massachusetts-based developer of computer software products. The company primarily markets and sells software under the brand name "Winferno Software" ("Winferno") that it claims will improve the performance of personal computers ("PCs").

2.      The top-grossing Winferno product (and also the subject of this lawsuit) is Capital Intellect's so-called PC optimization software called "Registry Power Cleaner."

3.      Capital Intellect's online advertisements and product descriptions on its website

claim that Registry Power Cleaner is capable of detecting, reporting, and repairing a wide range

of PC errors and other computer problems. In addition, Capital Intellect claims that Registry

Power Cleaner increases system startup speeds, optimizes computer performance, protects

against frequent computer crashes, and protects users' data.

4.    In an effort to convince consumers to purchase Registry Power Cleaner, Capital

Intellect's website offers a trial version of the software that allows consumers to run a "Free

Registry Scan." When a user runs the free scan, the software (by intentional design) invariably

reports that scores of "Critical Errors" are causing the computer's status to be "High Risk." The

software then claims that purchase of the full, registered version of Registry Power Cleaner is

necessary to remedy the errors detected.[1]

5.    The unfortunate truth is that rather than actually performing any meaningful

assessment of a computer's condition, Capital Intellect programmed Registry Power Cleaner to

mischaracterize the severity of errors and problems reported through the software's diagnostics

scan, and to arbitrarily report that the computer is at "High Risk," without any real assessment.

As explained herein, this programmatic design induces unsuspecting consumers into i)

purchasing the full version of the software to "fix" these errors, and ii) to convince users that the

full version of Registry Power Cleaner functions as advertised.

6.    Through the deceptive and unlawful practices described herein, Capital Intellect

has deceived thousands of unsuspecting consumers into purchasing and continuing to use

Registry Power Cleaner.

**PARTIES**

7.    Plaintiff Jennifer Bilodeau is a natural person and citizen of the State of New

---

[1]    In the alternative, consumers may purchase a full version of Registry Power Cleaner
outright with a thirty-day money back guarantee. Regardless of a whether a consumer purchases

Jersey.

8.      Defendant Capital Intellect, Inc. is a Delaware corporation with its headquarters and principal place of business located at 179 South Street, Boston, Massachusetts 02111. Defendant Capital Intellect does business throughout this District and the United States.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative class is a citizen of a state different than Defendant, (ii) the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

10.     This Court has personal jurisdiction over Capital Intellect because it conducts business in Massachusetts and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from Massachusetts. Additionally, Capital Intellect is headquartered in Boston, Massachusetts.

11.     Venue is proper in this District under 28 U.S.C. § 1391(a) because Defendant maintains its headquarters and principal place of business in this District and the injuries of which Plaintiff complains arose here and, on information and belief, the relevant operations and business decisions regarding the Registry Power Cleaner software and misrepresentations about the same at issue in this lawsuit emanated from Capital Intellect's corporate headquarters in this District. Venue is additionally proper because Defendant transacts significant business in this District, including soliciting consumer business and entering into consumer and business transactions.

# FACTUAL BACKGROUND

## I.      A brief overview of Capital Intellect, Inc.

12.      Founded in 2000,[2] Capital Intellect is a software development company located in Boston, Massachusetts. Capital Intellect develops PC software that it markets and sells under its Winferno Software brand, which was launched in 2002.[3] On its website, Capital Intellect claims that its mission is to "create easy-to-use yet powerful software that cleans and optimizes your PC."[4]

13.      In addition to offering Registry Power Cleaner through its own websites, Capital Intellect contracts with third party vendors, such as software developer McAfee Inc. ("McAfee"), to sell the software. As explained below, Capital Intellect crafts the marketing materials used by third party vendors to sell Registry Power Cleaner, thus representations made about the software are materially identical across their websites. *Compare* Capital Intellect's Registry Power Cleaner webpage, http://www.winferno.com/products.aspx (last accessed January 14, 2014); *and* McAfee's Registry Power Cleaner webpage, http://home.mcafee.com/store/registry-power-cleaner (last accessed January 14, 2014).

## II.      Capital Intellect tricks consumers into purchasing Registry Power Cleaner through a common deceptive scheme.

14.      A consumer searching the World Wide Web for software to repair a damaged computer, protect against security threats, or generally increase the speed or performance of a PC will likely encounter advertisements for Registry Power Cleaner. Upon clicking a hyperlink, the

---

[2]      *See* Massachusetts Corporate Registry, http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?FEIN=043572066&SEARCH_TYPE=1 (last visited January 14, 2014).

[3]      *See* About Winferno Software, http://www.winferno.com/about-us.aspx (last visited January 14, 2014).

[4]      *Id.*

user is directed to Capital Intellect's website, www.winferno.com, where an explanation is

provided about Registry Power Cleaner's utility and functionality.

15.     Capital Intellect's website first describes the problems that often lead to serious

computer errors, crashes, and performance degradation. Following is an example of one such

description.

> **Is your PC slow and crashing frequently?** If so, a damaged registry is probably
> to blame. With regular, everyday use most PCs develop serious registry errors that
> cause system crashes, slow speeds and can seriously harm the overall health of
> your PC.[5]

16.     The website also says that Registry Power Cleaner is capable of performing the

following functions to fix the types of errors described above:

- "Safely & effectively repairs PC registry errors";
- "Stabilizes for better performance";
- "Improves speed"; and
- "Scans for hidden threats."[6]

17.     To demonstrate the software's potential, Capital Intellect's website encourages

downloading or purchasing Registry Power Cleaner to scan the user's PC and fix any problems

discovered.

*          *          *

---

[5]     Capital Intellect's Registry Power Cleaner download webpage,
http://www.winferno.com/downloads.aspx (last accessed January 14, 2014); *see also* McAfee
Registry Power Cleaner webpage, http://home.mcafee.com/store/registry-power-cleaner (last
accessed January 14, 2014).

[6]     Capital Intellect's Registry Power Cleaner information webpage,
http://www.winferno.com /products-rpc.aspx (last accessed July 15, 2013); *see also* McAfee's
Registry Power Cleaner webpage, http://home.mcafee.com/store/registry-power-cleaner (last
accessed January 14, 2014).

**(Figure 1.)**

    **A.**    **Capital Intellect's marketing materials misrepresent the utility of Registry Power Cleaner.**

    18.    In addition to the representations listed above, Capital Intellect also makes the following claims on its websites about Registry Power Cleaner's features:[7]

- **Find & Safely Repair harmful registry errors that make your PC unstable.** Using a high performance algorithm, Registry Power Cleaner deep scans your PC to locate hard-to-find registry errors that cause system crashes and freezes. Next [*sic*] Registry Power Cleaner applies powerful fixes to stabilize your PC.

- **Fast and Powerful Scans.** Registry Power Cleaner features 16 powerful deep scans to locate hard to find registry errors.

- **Clean your registry of unneeded entries that can slow down your PC.** Overtime [*sic*] your registry becomes bogged down with unneeded files, orphaned references and other junk that can seriously slow down your PC. Registry Power Cleaner smartly analyzes your registry to determine what you need and what you don't. It then recommends smart fixes to improve your overall PC speed.

- **Speed up your PC and improve system performance.** By removing invalid entries and broken shortcuts, Registry Power Cleaner will drastically speed up your PC.

---

[7]    *Id.*

19.     Unfortunately for the consumer, these representations do not accurately reflect Registry Power Cleaner's actual capabilities. The truth is that Registry Power Cleaner performs one basic function: it removes registry keys from the Microsoft Windows registry.[8] This technique does not come close to squaring with Defendant's representations about the functionality of Registry Power Cleaner. For instance, and as discussed more fully below, removing registry keys will not eliminate damaging PC errors, appreciably improve a computer's speed or boot time, prevent the common causes of system freezes and crashes, or remove "hidden threats."

20.     Yet because of the impression created by Capital Intellect's statements about Registry Power Cleaner's utility, consumers understandably expect that the software detects and removes harmful errors. To capitalize on this expectation, Capital Intellect designed both the trial and full version of Registry Power Cleaner to superficially appear to perform actual analyses of consumers' PCs. This facade, however, is simply part of Capital Intellect's scheme.

**B.      Capital Intellect, through Registry Power Cleaner's in-software representations, falsely informs users that their PCs are damaged by harmful errors.**

21.     Upon running a scan with Registry Power Cleaner, a window is displayed showing the "Errors" present on the computer. The trial version of the software also provides an assessment of the computer's "Status."  *See* Figure 1 (showing a screenshot of Registry Power

---

[8]     The Windows "registry" is a database of configuration settings that helps facilitate the functioning of computer applications. Registry keys serve as placeholders that store settings and configuration information—information like a user's default font size in Microsoft Word, for example. At times, registry keys are no longer necessary (like if the user uninstalls Microsoft Word in the previous example), and may be removed without consequence. Invalid or empty registry entries, or "keys," are often the result of legacy programs from previous versions of Windows operating systems that are no longer included in the current operating system or programs that users have installed but subsequently deleted. Invalid or empty registry entries have no measureable affect on a computer's performance, speed, or security.

Cleaner after an initial scan on a brand new computer showing 119 "Critical Errors" and a "High Risk" PC Status).



(**Figure 2.**)

22.     Directly underneath the software's error reporting mechanism is a button labeled "Repair Errors."

23.     Clicking on the "Repair Errors" button using the free trial version of Registry Power Cleaner results in a separate window being displayed that offers the user to purchase the software to "fix" errors identified by the free scan. The full version of the software "fixes" (i.e., removes registry keys) the errors identified during the scan.

24.     The display window offering the full version of Registry Power Cleaner's claims that "Failing to clean your registry can result in fatal PC errors," and that if the user is experiencing sudden crashes or system freezes, sluggish or slow speeds, or lots of error messages, "these are all symptoms of registry problems and should be repaired." The dialog box also says "Your registry is the backbone of your PC. It contains vital information that your PC

needs to work correctly. But if just one part breaks or gets corrupted, it can literally fall apart."

See Figure 2 (showing the dialog box rendered by clicking "Repair Errors" after a free diagnostic

scan using Registry Power Cleaner).



**(Figure 3.)**

25.     Although the text and graphics shown pictured in Figures 2 and 3 above appear

alarming to the user, they were designed by Capital Intellect to misrepresent the condition of a

computer without performing *any* credible evaluation. In this way, the user believes that Registry

Power Cleaner is actually detecting, reporting, and repairing harmful computer errors—

presumably the same errors that Capital Intellect represented that the software would fix.

### III.     Plaintiff's expert uncovers that Capital Intellect designed Registry Power Cleaner to always report benign errors as harmful.

26.     On the surface, it appears as if Registry Power Cleaner is actually detecting,

reporting, and repairing errors that threaten the operations of a user's PC. In reality, Capital

intellect intentionally designed the software to vastly overstate both the amount and the severity

of errors that the software purportedly fixes in an effort to convince consumers that Registry

Power Cleaner functions as advertised—*i.e.*, that it actually detects and removes credible threats

and PC problems.

27.     Through her attorneys, Plaintiff has engaged a computer forensics expert to examine Registry Power Cleaner. The results of this investigation confirm that the software always reports that a user's PC contains scores of "critical" registry errors and that the PC is at "High Risk"—regardless of the condition or type of computer the software is installed on.

28.     For instance, the results from Registry Power Cleaner shown in Figure 2 above were produced after conducting a diagnostic scan on a *brand new computer*. Ostensibly, these results scare the user into believing that the PC is damaged or at-risk, and that continued use of Registry Power Cleaner is necessary to "fix" these problems. The facts show otherwise. Plaintiff's expert has determined that, by any conceivable measure, the errors detected by Registry Power Cleaner *are not credible threats* to a PC's functionality.

29.     In relevant part, Plaintiff's expert's investigation uncovered that Capital Intellect programmed Registry Power Cleaner to (i) always detect "Errors" on a user's PC (even when none exist), (ii) artificially inflate the number of errors detected on a user's PC, (iii) characterize all registry keys as "Errors" without any actual assessment, and (iv) arbitrarily report that the user's computer status as "High Risk" in the free trial version.

30.     The expert's research also shows that both the free trial version and full version of Registry Power Cleaner were deliberately designed to mischaracterize registry keys as "Errors" to support the appearance that the software is functioning properly.

31.     Irrespective of the particular errors that Registry Power Cleaner reported existed on their computers, Plaintiff and each member of the Class relied upon Capital Intellect's false representations in that they believed the software was accurately detecting and removing errors as represented by its marketing. As a result, Plaintiff and the Class members purchased and

continued using Registry Power Cleaner, unaware that the software they relied on to diagnose and fix their PCs was fraudulently designed.

32.     Through the deceptive scheme described herein, Capital Intellect profits, and continues to profit, by defrauding consumers into believing that their PCs are suffering from harmful errors, and that the purchase and continued use of Registry Power Cleaner is necessary to "fix" these problems. But, because the software does not actually provide the benefits advertised, Capital Intellect does not deliver on its promises to Registry Power Cleaner users.

## IV.     Capital Intellect's model for marketing and selling Registry Power Cleaner follows the same pattern as other companies in the utility software industry.

33.     An examination of the utility software industry as a whole shows that Capital Intellect's decisions to use the sorts of fraudulent programmatic design and marketing practices described here are not unique. Indeed, the industry has utilized similar techniques in selling other PC improvement utility software for nearly a decade. Recently, however, software developers—like Capital Intellect and its competitors—have been called to account for this method of profiting off consumers unable to recognize the fraudulent technological design and methodologies underlying this type of supposed performance-enhancing software.

34.     Indeed, numerous lawsuits have been filed against well-known competitors of Capital Intellect (*e.g.*, Symantec Corp. and AVG Technologies)—including several by Plaintiff's counsel here—which allege similar claims related to the fraudulent design and marketing of so-called utility software products. Several of those cases have resulted in class-wide settlements and industry-shaping software modifications, which compel the implementation of far more transparent error detection and reporting procedures.

35.     Rather than follow suit and make the changes necessary to truthfully describe its software, and to modify its design to ensure that it accurately detects and reports errors, Capital Intellect continues to use its unlawful business practices to turn a profit.

**V.      Plaintiff Bilodeau's experience and the initial action.**

36.      In or around June 2011, Plaintiff Bilodeau began to experience problems with her computer. Specifically, her computer appeared to be running slower than usual, and it often froze or shut down without warning.

37.      Accordingly, Bilodeau performed an Internet search for software to repair her computer.

38.      An advertisement for Registry Power Cleaner was displayed to Bilodeau, which on click directed her to a McAfee website that offered the software for sale.

39.      While on the website, Bilodeau viewed representations about the software's utility.[9] Relying on Capital Intellect's representations about Registry Power Cleaner utility— namely, that "[w]ith regular, everyday use most PCs develop serious registry errors that cause system crashes, slow speeds and can seriously harm the overall health of your PC" and that Registry Power Cleaner "safely & effectively repairs PC registry errors," "stabilizes for better performance," "improves speed," and "scans for hidden threats," as described in Paragraphs 15– 25, and Figures 1 and 2—Bilodeau purchased and downloaded the software.

40.      After she installed Registry Power Cleaner, she performed a "scan" of her computer using the software. Registry Power Cleaner then reported to Bilodeau that her computer was afflicted by hundreds of "Errors" that needed repair. Reasonably believing that the software was detecting and removing harmful errors, Bilodeau continued to use the software beyond the 30-day money back guarantee period.

41.      In reality, and as described in Paragraphs 26-31 above, the errors "detected" by the software—the same errors that Plaintiff's expert has confirmed are found on any computer

---

[9]      As explained above, McAfee's website's marketing materials for Registry Power Cleaner are virtually identical to those found on Winferno's website.

that the software is run on—did not pose any actual risk to the condition of Plaintiff Bilodeau's PC. Moreover, the registry keys that Registry Power Cleaner is designed to always report *do not* have any appreciable effect upon a computer's performance.

42.     Likewise, while Bilodeau's PC *did* suffer from actual performance problems at the time she purchased Registry Power Cleaner, the software didn't perform any assessment of registry keys detected before characterizing them as errors.

43.     But for the uniform misrepresentations on websites retailing Registry Power Cleaner regarding the utility of the software, Plaintiff would not have downloaded, installed, and run the software on her computer. Similarly, but for the misrepresentations made by Defendant Capital Intellect through the Registry Power Cleaner software itself—namely, that her computer was riddled with "Errors"—Bilodeau would not have agreed to pay for the use of the software beyond the trial period.

44.     Additionally, because the full, registered version of Registry Power Cleaner cannot actually perform the level of utility described by the Defendant (*i.e.*, it did not perform any credible assessment of her PC, nor truthfully categorize and report "Errors"), she purchased a software product that is worth much less than what was reflected in the purchase price she paid.

45.     As a result, on August 31, 2012, Bilodeau filed a class action complaint in the Northern District of California against both Capital Intellect and McAfee for their common misrepresentations regarding the utility of Registry Power Cleaner.

46.     However, during the course of litigation, McAfee represented to the Court that it wasn't responsible for the development of the Registry Power Cleaner software, nor for the form and language of advertisements and representations concerning the software. Relying in good faith upon McAfee's denials, and consequently determining Massachusetts' courts to have the

greatest interest in the outcome of this matter and thus constitute a more proper venue, Bilodeau

declined to amend her complaint, and instead filed the instant class action complaint in this

District solely against Capital Intellect.

## CLASS ALLEGATIONS

47.   **Class Definition:** Plaintiff Jennifer Bilodeau brings this action pursuant to Fed.

R. Civ. P. 23(b)(2) and (3) on behalf of herself and a Class of similarly situated individuals,

defined as follows:

> All individuals and entities in the United States and its territories that have
> purchased the Registry Power Cleaner software.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents,

successors, predecessors, and any entity in which the Defendant or its parents have a controlling

interest and its current and former employees, officers, and directors, (2) the Judge or

Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's

immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons

whose claims in this matter have been finally adjudicated on the merits or otherwise released,

and (5) the legal representatives, successors, or assigns of any such excluded person.

48.   **Numerosity**: The exact number of Class members is unknown to Plaintiff at this

time, but on information and belief, Defendant has sold its software to thousands of Class

members throughout the country, making joinder of each individual member impracticable.

Ultimately, Class members will be easily identified through Defendant's records.

49.   **Typicality**: Plaintiff's claims are typical of the claims of the other members of the

Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful

conduct during transactions with Plaintiff and the Class.

50.   **Adequate Representation:** Plaintiff will fairly and adequately represent and

protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

51.     **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members:

a)     whether Defendant has intentionally designed the software to deceive consumers into purchasing its product and believing it functions as advertised;

b)     whether Defendant's conduct described herein constitutes breach of express warranties under the Massachusetts Commercial Code;

c)     whether Defendant's conduct described herein constitutes breach of implied warranty of merchantability under the Massachusetts Commercial Code;

d)     whether Defendant's conduct described herein constitutes fraudulent inducement;

e)     whether Defendant's conduct described herein constitutes a breach of contract; and

f)     whether Defendant's conduct described herein constitutes a breach of the implied covenant of good faith and fair dealing.

52.     **Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct.

Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

53.    **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class.

54.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned in discovery.

### FIRST CAUSE OF ACTION
**Breach of Express Warranties**
**Pursuant to Mass. Gen. Laws ch. 106 § 2-313**
**(On Behalf of Plaintiff and the Class)**

55.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein.

56.     Licenses to use consumer software are "goods" within the meaning of Uniform

Commercial Code Art. 2 and Mass. Gen. Laws ch. 106 § 2-105. Accordingly, when Bilodeau

purchased a license to use the Registry Power Cleaner software in June 2011, the transaction was

a sale of goods within the meaning of the UCC Art. 2, and Mass. Gen. Laws ch. 106 § 2-105.

57.     Under Mass. Gen. Laws ch. 106 § 2-313, Capital Intellect's sale of Registry

Power Cleaner included express warranties created by Capital Intellect's affirmations of facts

and promises made through its advertising, websites, and in-software representations.

58.     Through its website and online marketing materials, Capital Intellect expressly

represented to Plaintiff and the Class that Registry Power Cleaner would "Find & Safely Repair

harmful registry errors that make your PC unstable." Capital Intellect further represented that

Registry Power Cleaner "Safely & effectively repairs PC registry errors," "Improves speed,"

"Scans for hidden threats," and "Stabilizes [users' PC] for better performance."

59.     Likewise, after Bilodeau installed Registry Power Cleaner, the software

represented to her that her computer had hundreds of "Errors" and that the software would repair

the supposed errors. Registry Power Cleaner also informed Plaintiff that her computer was yet

again in need of "repair" every time that she ran the software.

60.     Capital Intellect's affirmations and promises to Plaintiff and the Class related to

an essential characteristic of the Registry Power Cleaner software—namely, its ability to

accurately detect, report and repair computer errors, as well as improve the overall speed and

functionality of Plaintiff's and the Class members' PCs.

61.     Plaintiff and the Class relied upon these affirmations and promises by paying

monies to purchase, register, and not seek their money back for a full version of Registry Power

Cleaner. Capital Intellect's representations described herein formed the basis of the bargain between the parties, in that Plaintiff and the Class reasonably believed that they were purchasing software that would honestly and accurately detect, report and repair harmful computer errors and threats, and fix them. But for Defendant's affirmations and representations, Plaintiff and the Class would not have purchased the Registry Power Cleaner software.

62.     Defendant breached these express warranties by designing Registry Power Cleaner such that it did not perform any meaningful diagnostic test on Plaintiff's or the Class's computers, and instead falsely identified and exaggerated the presence of errors and threats on the computers.

63.     Capital Intellect's breach of express warranties injured Plaintiff and the Class because they purchased a product of diminished value—software that does not actually perform the beneficial tasks represented through Defendant's affirmations and promises.

64.     As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and the Class members suffered damages—including in the form of the fees paid, directly or indirectly, to Capital Intellect to purchase its Registry Power Cleaner software—in an amount to be proven at trial. Capital Intellect has actual or constructive notice of such damages.

65.     Accordingly, Plaintiff and the Class members seek actual and compensatory damages to the maximum extent available.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**Pursuant to Mass. Gen. Laws ch. 106 § 2-314**
**(On Behalf of Plaintiff and the Class)**

66.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

67.     Licenses to use consumer software are "goods" within the meaning of Uniform

Commercial Code Art. 2 and Mass. Gen. Laws ch. 106 § 2-105. Accordingly, when Bilodeau purchased a license to use the Registry Power Cleaner software in June 2011, the transaction was a sale of goods within the meaning of the UCC Art. 2, and Mass. Gen. Laws ch. 106 § 2-105.

68.     Pursuant to Mass. Gen. Laws ch. 106 § 2-314, a contract for the sale of goods contains an implied warranty that the goods are merchantable. To be merchantable, goods must be "fit for the ordinary purposes for which such goods are used" and "conform to the promises or affirmations of fact made on the container or label if any." § 2-314.

69.     Plaintiff and the Class, on the one hand, and Capital Intellect, on the other, entered into valid and enforceable agreements where by Plaintiff and the Class agreed to purchase, and Capital Intellect agreed to provide software that would honestly and accurately detect, report and repair harmful computer errors and threats.

70.     Implied within those contracts was Capital Intellect's representation that the Registry Power Cleaner software would, in fact, be fit for identifying, reporting and repairing harmful errors and threats found on a user's computer. Likewise, Defendant's online representations and representations within the software itself, imply that the software is designed to repair a computer, clean its registry, and improve its performance and stability.

71.     Capital Intellect breached the implied warranty of merchantability because, in actuality, Registry Power Cleaner is not fit to repair a computer, clean its registry, or improve its performance and stability. Rather, Registry Power Cleaner is designed to identify "false positives" (*i.e.*, to report problems that do not in fact exist) and/or to misrepresent the severity of problems found on the user's computer. Registry Power Cleaner is, therefore, unfit to perform the primary functions for which Plaintiff and the Class agreed to purchase it.

72.     At the time Defendant sold Registry Power Cleaner (whether directly or through

an authorized third-party vendor) to Plaintiff and the Class, the software was not reasonably suitable for diagnosing and repairing computer errors and threats, cleaning computer registries, or improving computer performance and security.

73.     By using Registry Power Cleaner as instructed by Defendant, Plaintiff and the Class used the software in a manner that Defendant intended and/or reasonably could have foreseen.

74.     Capital Intellect's breach of the implied warranty of merchantability injured Plaintiff and the Class because they purchased a product of diminished value—software that does not honestly and accurately diagnose and repair computer errors and threats, clean computer registries, or improve computer performance and security.

75.     As a direct and proximate result of Capital Intellect's breach of the implied warrant of merchantability, Plaintiff and the Class suffered damages—including in the form of the fees paid to purchase Registry Power Cleaner—in an amount to be proven at trial. Capital Intellect had actual or constructive notice of such damages.

76.     Accordingly, Plaintiff and the Class members seek actual and compensatory damages to the maximum extent allowable.

**THIRD CAUSE OF ACTION**
**Fraudulent Inducement**
**(On Behalf of Plaintiff and the Class)**

77.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

78.     As described with particularity in Paragraphs 15 through 28 and throughout all Counts of this Complaint, Defendant has used, and continues to use, marketing tactics it, as the creator of Registry Power Cleaner, knows or reasonably should know are false and misleading.

79.     To induce Plaintiff and the Class to purchase Registry Power Cleaner, Defendant

affirmatively represented to them that the free version and full registered version of its software possessed certain utility. Specifically, Defendant represented that Registry Power Cleaner would honestly and accurately scan their PCs for harmful errors and problems, increase their PCs' speed and stability, and perform beneficial tasks such as those described in Paragraph 15 through 18. Further, through the software itself, Capital Intellect affirmatively falsely represented that Plaintiff's and Class's PCs were harmed by "Errors."

80.     Capital Intellect's representations were, in fact, false. In particular, Registry Power Cleaner does not honestly identify and repair computer errors or privacy and security threats, increase computer and Internet speeds, or increase computer stability and functionality as represented. Likewise, the results of the Registry Power Cleaner's "Free Registry Scan" were false because Registry Power Cleaner did not perform an actual evaluation of errors existing on Plaintiff's and the Class's computers.

81.     The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

82.     As the software's developer, Defendant Capital Intellect knew that its representations about Registry Power Cleaner's utility were false. Defendant intentionally designed its public representations (both on its website and those of third-party vendors such as McAfee) to mislead consumers about the software's utility, and programmed the software to falsely report PC errors and to deceive users about their computers' system condition.

83.     Defendant made these misrepresentations specifically to induce Plaintiff and as many other consumers as possible to purchase Registry Power Cleaner.

84.     As consumers lacking the requisite technical expertise to independently gauge the

software's underlying functionality, and taking Defendant's statements at face value, Plaintiff and the Class justifiably relied upon Defendant's misrepresentations and would not have purchased Registry Power Cleaner but for the misrepresentations that the software would perform the beneficial tasks advertised.

85.     By using false and fraudulent marketing tactics to misrepresent the software's actual utility, and inducing Plaintiff and the Class to purchase the software based on those misrepresentations, Defendant has engaged in fraudulent practices designed to mislead and deceive consumers.

86.     As a result of relying on Defendant's misrepresentations, Plaintiff and the other members of the Class have been damaged in the amount of Registry Power Cleaner's purchase price.

87.     Plaintiff therefore prays for relief in the amount of the purchase price of Defendant's Registry Power Cleaner.

**FOURTH CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

88.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

89.     Plaintiff and the Class members entered into agreements with Defendant whereby Defendant agreed to sell, and Plaintiff and the Class agreed to purchase, software that would detect and remove legitimate computer errors and problems from Plaintiff's and the Class's PCs, and perform the beneficial tasks as described above.

90.     Based on the foregoing representations, Plaintiff and the Class paid, and Defendant accepted, Registry Power Cleaner's purchase price, and therefore performed their obligations under the contracts.

91.     As such, Defendant voluntarily assumed a contractual obligation to honestly

diagnose and remove errors and problems—such as those described in Paragraphs 15 through

18—on Plaintiff's and the Class's PCs and to honestly indicate whether such errors and problems

existed on their PCs. This obligation is a material term of the agreement. Defendant did not

honor this obligation.

92.     Capital Intellect breached its contracts with Plaintiff and the Class by failing to

honestly and accurately inform them about the true condition of their computers, and further by

providing software that failed to offer the benefits promised.

93.     The aforementioned breaches of contract have directly and proximately caused

Plaintiff and the Class economic injury and other damages, because they purchased a product

that does not perform as represented, and therefore lacks the promised and paid-for utility.


**FIFTH CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Class)**
**(Argued only in the alternative to the Fourth Cause of Action, for Breach of Contract)**

94.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein, except for those in Paragraphs 88 through 93.

95.     In order to benefit from Defendant's supposed PC optimization and threat-

removal software products, Plaintiff and the Class affirmatively allowed Defendant's Registry

Power Cleaner to be installed on their PCs.

96.     Defendant's agreement to have its software installed on and to remove threats

from Plaintiff's and the Class's PCs, in the manner described above, in exchange for fees is a

valid and enforceable contract between Plaintiff and the Class on the one hand, and Defendant on

the other.

97.     Defendant breached the provisions of the agreement, specifically by not honoring

its responsibilities to perform truthful diagnostic and remedial operations.

98.     Massachusetts law recognizes the implied covenant of good faith and fair dealing in every contract.

99.     Implicit in the contract were provisions prohibiting Defendant from engaging in conduct that frustrated or injured Plaintiff's and the Class's rights to receive the benefits of the contract.

100.    Plaintiff and the Class sought to receive the bargained-for benefit of obtaining a software product that performed truthful diagnostic and remedial operations, as advertised by Capital Intellect.

101.    Rather than provide the bargained-for benefit to Plaintiff and the Class, Defendant designed and sold software that falsely represented the condition of scanned computers and failed to perform its advertised functions. Defendant's conduct frustrated Plaintiff's and the Class's rights to receive the benefits of the contract by creating the illusion that the benefits were supplied (when, in fact, they were not), and leading Plaintiff and the Class to believe that their contracts had been fulfilled.

102.    Defendant's misconduct and breach of the implied covenant of good faith and fair dealing as described herein resulted in injury to Plaintiff and the Class in the form of the price paid in excess of Registry Power Cleaner's actual utility and/or money conferred on Defendant by Plaintiff and the Class, in exchange for fully functional software, that was knowingly and wrongfully retained by Defendant.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment**
**(in the alternative to Breach of Contract and Breach of the**
**Implied Covenant of Good Faith and Fair Dealing)**
**(On Behalf of Plaintiff and the Class)**

103.    Plaintiff incorporates by reference Paragraphs 1 through 87 as if fully set forth

herein.

104.    Plaintiff expressly brings this claim in the alternative to her claims for Breach of

Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.

105.    If the Court finds Plaintiff's and the Class's contracts with Defendant invalid or

unenforceable, Plaintiff and the members of the Class may be left without any adequate remedy

at law.

106.    Plaintiff and the Class members each conferred a benefit upon Capital Intellect in

the form of the monies they paid to purchase the full version of Registry Power Cleaner.

107.    Capital Intellect knowingly received and retained those benefits from Plaintiff and

the Class under circumstances that would render it unjust to allow Defendant to retain such

benefits.

108.    In exchange for Registry Power Cleaner's purchase price, Plaintiff and the Class

members each reasonably expected to receive the benefit of software that would accurately

identify, report, and repair computer errors and threats, as represented by Defendant.

109.    Because of its representations to Plaintiff and the Class, Defendant knew or

should have known that Plaintiff and the Class purchased Registry Power Cleaner with the

reasonable expectation of receiving the software's aforementioned benefits in return. Capital

Intellect knew that Plaintiff's and the Class's expectation was inaccurate—and Defendant was

responsible for that inaccuracy—yet Defendant sold (or caused to be sold) Registry Power

Cleaner to Plaintiff and the Class without correcting that expectation.

110.    By falsely informing Plaintiff and the Class that they needed to purchase Registry Power Cleaner to repair problems on their computers that did not exist or were dramatically overstated, Defendant knowingly received and appreciated benefits at the expense, and to the detriment, of Plaintiff and the Class.

111.    Capital Intellect's receipt of monies from Plaintiff and the Class allowed it to utilize those monies for its own purposes, without expending resources to perform its obligations to them.

112.    Under principles of equity and good conscience, Defendant should not be permitted to retain the monies Plaintiff and the Class members paid to and were unjustly received by Capital Intellect as a result of its misconduct alleged herein.

113.    Accordingly, Plaintiff, on behalf of herself and the other members of the Class seek restitution and disgorgement of all monies unlawfully obtained by Capital Intellect through its misconduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jennifer Bilodeau, on behalf of herself and the Class, respectfully requests that this Court enter an Order:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Bilodeau as class representative, and appointing her counsel as class counsel;

B.      Awarding damages, including actual, compensatory, statutory, and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

C.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia,* an Order: (i) prohibiting Defendant from engaging in

the wrongful and unlawful acts described herein, (ii) requiring Defendant to disclose and admit

the wrongful and unlawful acts described herein, and (iii) requiring Defendant to fully disclose

the true nature of its software products in the future;

D.      Awarding Plaintiff and the Class their reasonable litigation expenses and

attorneys' fees;

E.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent

allowable; and,

F.      Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: January 17, 2014                 **JENNIFER BILODEAU**, individually and on
                                         behalf of all others similarly situated,

                                         By:   /s/ Erica C. Mirabella
                                              One of Plaintiff's Attorneys

                                              Erica C. Mirabella (#676750)
                                              emirabella@gnemlaw.com
                                              132 Boylston Street, 5th Floor.
                                              Boston, Massachusetts 02116
                                              Tel:  617.580.8270
                                              Fax: 617.583.1905

                                              Rafey S. Balabanian*
                                              rbalabanian@edelson.com
                                              Benjamin H. Richman*
                                              brichman@edelson.com
                                              Courtney Booth*
                                              cbooth@edelson.com
                                              EDELSON PC
                                              350 North LaSalle, Suite 1300
                                              Chicago, Illinois 60654
                                              Tel: 312.589.6370
                                              Fax: 312.589.6378

                                              *Motion for admission *pro hac vice* to be filed.