IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER BILODEAU, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL INTELLECT, INC., d/b/a WINFERNO SOFTWARE, a Delaware corporation,<br><br>Defendant. | Civil Action No. 1:14-CV-10129-MLW<br><br>**ORAL ARGUMENT REQUESTED** |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

Defendant Capital Intellect, Inc. d/b/a Winferno Software ("Winferno") submits this memorandum in support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction. Although Plaintiff Jennifer Bilodeau has invoked this Court's jurisdiction under 28 U.S.C. § 1332(d), her putative Class Action Complaint (the "Complaint") does not, and cannot, involve an amount in controversy in excess of five million dollars. The Complaint lacks any allegation with the requisite specificity that could support Plaintiff's claim for damages, which is merely stated as an *ad damnum*. Moreover, both as a matter of fact and as a matter of law, it is a legal certainty that Plaintiff cannot recover an amount above § 1332(d)'s jurisdictional minimum. Accordingly, this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

### BACKGROUND

According to the Complaint, Registry Power Cleaner ("RPC") is a software program that purports to improve computer performance. Winferno advertises that the software works by deleting unhelpful "registry keys" that can clog up a user's operating system and slow a

computer down.  Winferno developed the RPC software and markets the software to consumers both on its own and through partners.  Consumers can buy licenses to the software from Winferno directly or from one of its partners.  An RPC license entitles the licensee to use of the RPC software on her computer for one year, after which the purchaser must renew the license in order to continue legally using the product.  A copy of the standard license (the "RPC License"), to which all purchasers must affirmatively agree, is attached as Exhibit B to the accompanying Affidavit of Jon Lal (the "Lal. Aff.").[1]

Plaintiff's claims center on allegations that RPC does not perform as advertised.  She brings this action, her second against Winferno, on behalf of a putative class of RPC consumers asserting a variety of legal theories.  Plaintiff's first suit against Winferno, brought in the United States District Court for the Northern District of California, ended in a successful Rule 12(b)(6) motion against her.  *See Bilodeau v. McAfee, Inc.* (*Bilodeau I*), No. 12-04589, 2013 U.S. Dist. LEXIS 89226 (N.D. Cal. June 24, 2013), attached hereto as Exhibit A.  The court there held that "neither Plaintiff's allegations regarding the alleged representation . . . nor Plaintiff's allegations of RPC's alleged false reporting have satisfied the particularity requirement of Rule 9(b)." *Id.* at *32, slip op. at 16.  Although the court granted Plaintiff leave to file an amended complaint,[2]

---

[1] Additionally, users who download the trial version of the RPC software must agree to a trial license before using that version. A copy of the standard trial license is attached as Exhibit C to the same affidavit.

[2] Specifically, Hon. Lucy Koh included the following in her Order: "Should Plaintiff elect to file an amended complaint curing the deficiencies discussed herein, she shall do so within 30 days of the date of this Order. Failure to meet the 30-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice. Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15." *Bilodeau I*, 2013 U.S. Dist. LEXIS 89226, at *44, slip op. at 21.

Plaintiff apparently decided to shop for a more hospitable forum or judge. She therefore voluntarily dismissed the case under Rule 41(a)(1) and filed the Complaint in this Court.

Despite Plaintiff's intransigence, her lawsuit is little more than an endeavor in trying to squeeze blood from the proverbial stone. The truth is, RPC is far from a blockbuster product. As described in the contemporaneously-filed Affidavit of Jon Lal, Winferno's President and sole shareholder, the company has sold only 190,221 licenses to U.S. consumers over the past four calendar years. (*See* Lal. Aff. ¶ 10.)[3] These sales resulted in only $2,819,072 of gross revenue during that time. (*Id.*) Even if license renewals are included in the number—that is, sales to consumers who were presumably satisfied with the software's performance—the total is only $3,139,638. (*Id.*) This includes sales both by Winferno and Winferno's partners. (*Id.*) In short, between January 1, 2010 and December 31, 2013, American consumers spent only $2,819,072 in original purchases of the software.

Plaintiff alleges in her Complaint that the amount in controversy in this case is over five million dollars. (*See* Compl. ¶ 9.) But as the sales data in the Lal Affidavit make clear, this case concerns a product whose sales do not even approach that amount. Thus, this Court lacks jurisdiction over the subject matter of this lawsuit.

## **ARGUMENT**

The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), precludes federal court jurisdiction unless the amount in controversy in a putative class action exceeds five million dollars. Plaintiff, however, has not brought such a case to this Court. Her allegations are on

---

[3] As part of its Local Rule 7.1 discussions respecting this motion, Winferno provided this data to Plaintiff's counsel, in the form of a sworn affidavit, on March 10, 2014; counsel apparently does not contest the facts (nor could it), but nevertheless refused to voluntarily dismiss this action for want of subject-matter jurisdiction.

their face deficient. It is, moreover, a legal certainty that Plaintiff cannot meet CAFA's jurisdictional threshold. Even if every member of the putative class received a full refund from Winferno of the purchase price of the RPC software, the award would fall far short of the jurisdictional threshold. And a full refund is the best result Plaintiff could hope for (giving the factual allegations of her Complaint the full benefit of the doubt for purposes of this motion) because the terms of the RPC License to which Plaintiff and all members of her putative class agreed, limit any recovery to the software's purchase price. Finally, Plaintiff's claims for punitive damages or attorney's fees are, at best, illusory. There is no basis in her Complaint (the second she had filed) or in Massachusetts law for obtaining either in this case.

The Court, moreover, should dismiss this case with prejudice to re-filing in federal court. Plaintiff has already had two chances to plead a federal case, and was presented with evidence confirming the lack of subject matter jurisdiction on March 10, but still refused to try to remedy the deficiency (if it were even possible) by way of an amendment then or to dismiss this case. This Court should not sanction her shotgun approach to litigation.

### A. THIS COURT LACKS SUBJECT-MATTER JURISDICTION.

Plaintiff invokes one, and only one, source of this Court's jurisdiction: The Class Action Fairness Act, 28 U.S.C. § 1332(d). But that statute does not provide a jurisdictional footing for this case. While CAFA generally confers federal jurisdiction over class actions, even if the parties are not completely diverse, it does so only where "the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2); *see also Std. Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013). The amount in controversy in this case demonstrably is far less. Accordingly, this Court has no discretion to do anything but to dismiss this case pursuant to Rule 12(b)(1) and 12(h)(3). *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action.") (emphasis added).

When a defendant challenges the adequacy of the amount in controversy, the Court cannot rely on a plaintiff's general allegations that the amount exceeds the minimum required. *See Dep't of Recreation & Sports v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991). The plaintiff must instead "alleg[e] *with sufficient particularity* facts indicating that it is not a legal certainty that" her claims involve less than the jurisdictional amount. *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001) (emphasis added); *see also Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 42-43 (1st Cir. 2012); *Gibson v. Jeffers*, 478 F.2d 216, 221 (10th Cir. 1973) (plaintiff must allege sufficient damages to assure the district court that the jurisdictional requirement has not been "thwarted by the simple expedient of inflating the complainant's *ad damnum* clause."). Even where the plaintiff alleges such facts (and aside from the *ad damnum* this Plaintiff did not), the Court should not necessarily take her at her word. Where, as here, evidence shows "to a legal certainty that the plaintiff never was entitled to recover [the jurisdictional amount], and that his claim was therefore [feigned] for the purpose of conferring jurisdiction," the case must be dismissed. *Esquilin-Mendoza v. Don King Prods., Inc.*, 638 F.3d 1, 4 & n.1 (1st Cir. 2011) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)) (alterations omitted); *see also id.* at 4 (describing this standard as one of "objective good faith"). At root, the question is whether "[o]ne familiar with the applicable law could objectively. . . view[] the claim as worth the jurisdictional minimum." *Id.* at 6 (alterations omitted).

Plaintiff has not pled an amount in controversy with *any* particularity. Instead, she makes only passing mention of this Court's jurisdiction in her Complaint. Where she does, she supplies only the boilerplate recitation that "the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs." (Compl. ¶ 9.) The Complaint is otherwise bereft of any means of valuing

Plaintiff's claims or those of the putative class. Plaintiff does not allege how much she paid for her RPC license, or how much members of the putative class paid for their RPC licenses All she provides are "bald statements and round numbers" which cannot as a matter of law support federal jurisdiction. *See Abdel-Aleem*, 665 F.3d at 43; *see also id.* at 45 ("Where the opposing party has contested the alleged amount in controversy, the 'sufficient particularity' standard requires something more than a plaintiff's conclusory statements.").

Moreover, Plaintiff cannot—at least not in good faith—substantiate her inchoate allegations of damages because it is legally certain her claims do not meet the jurisdictional threshold. The "legal certainty" standard precludes subject-matter jurisdiction at least when: (1) "independent facts show that the amount of damages was claimed by the plaintiff merely to obtain federal court jurisdiction"; (2) "the terms of a contract limit the plaintiff's possible recovery"; or (3) "a specific rule of substantive law or measure of damages limits the amount of money recoverable by the plaintiff." *Doucot v. IDS Scheer, Inc.*, 734 F. Supp. 2d 172, 181 (D. Mass. 2010). Although any one of these factors would suffice, this Complaint fails on all three bases.

*First*, the Lal Affidavit establishes that Plaintiff could not plead into jurisdiction even if she tried.[4] The statute of limitations on Plaintiff's claims on behalf of the putative class limit any

---

[4] Courts routinely consider affidavits and other exhibits outside the pleadings on motions under Rule 12(b)(1). *See, e.g.*, *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) ("The Court can look beyond the pleadings—to affidavits and depositions—in order to determine jurisdiction."); *Doucout*, 734 F. Supp. 2d at 180; *Volpe v. United States*, 543 F. Supp. 2d 113, 117 (D. Mass. 2008). This is no less true for 12(b)(1) motions challenging the adequacy of the amount in controversy. "When the matter [is] in doubt, there often is a variety of . . . relevant information relating to the value of the plaintiff's case in the record before the district court. In many cases the court will have the benefit of various types of discovery material and post-institution . . . affidavits . . . ." 14AA Charles Alan Wright et al., *Federal Practice and Procedure* § 3702.3 (4th ed. 2011) (footnote omitted).

6

possible recovery to at most the past four years. *See* Mass. Gen. Laws ch. 106, § 2-725(1) ("An action for breach of contract for sale must be commenced within four years after the cause of action has accrued."). Approximately during that time—from January 1, 2010, to December 31, 2013— Winferno sold only $2,819,072 in licenses for the RPC software to U.S. customers. In other words, even if Plaintiff prevailed in this lawsuit and recovered a refund of the purchase price on behalf of the entire putative class, the class could never recover anything even approaching five million dollars. Plaintiff does not allege she suffered any compensatory or incidental damages related to her use of the RPC software, such as further deterioration of her computer's performance. (*See* Compl. ¶¶ 43-44, 64, 75, 86-87.) No one familiar with these facts could objectively value Plaintiff's claims at over the jurisdictional threshold.

*Second*, the terms of the RPC License conclusively dispel any doubt that Plaintiff is limited to recovering only the software's purchase price. A contractual limitation on liability precludes federal court jurisdiction when it means a plaintiff cannot meet the jurisdictional amount-in-controversy requirement. *See, e.g.*, *Pratt Central Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 353 (7th Cir. 1995) (Easterbrook, J.) ("a court has the power to dismiss for want of jurisdiction after deciding that a limitation-of-liability clause . . . caps damages at less than the jurisdictional amount") (emphasis omitted); *Sanchez-Arroyo v. Eastern Airlines, Inc.*, 835 F.2d 407, 408 (1st Cir. 1987); *see also* Wright, *supra*, § 3713 (collecting cases). The RPC License, which Winferno as a standard business practice has required purchasers since 2009 to accept (Lal Aff. ¶ 13), contains a limited warranty that provides for only two customer remedies. (*See* RPC License ¶ 6.) Under its terms, a purchaser's "exclusive remedy for any breach . . . shall be, at [Winferno's] sole option, to either (a) provide [the purchaser] with a copy of the Software that does substantially conform to the Documentation, or (b) if [the purchaser] return[s]

7

the Software and Documentation to [Winferno] refund the amount [the purchaser] paid for the License." (*Id.* ¶ 6(b))  The RPC License also includes a limitation of liability, which provides in relevant part that "under no circumstances or legal theory . . . shall [Winferno] be liable to [the purchaser] or to any other person for any indirect, special, incidental or consequential damages." (*Id.* ¶ 7 (capitalization omitted)).  By these plain terms, Plaintiff could at most recover the purchase price of the software—an amount that, as discussed, would equal only about $2,819,072 if recovered on behalf of the entire putative class.

Massachusetts law expressly endorses the enforceability of such limited warranties and limitations on consequential damages in contracts for the sale of goods.  *See* Mass. Gen. Laws ch. 106, § 2-719; *see also Cape Cod Commercial Linen Serv., Inc. v. Diamond Chem. Co.*, No. 13-10380, 2014 U.S. Dist. LEXIS 8738, at *7 (D. Mass. Jan. 24, 2014) ("As a general matter, parties may contract to limit damages arising out of an Article 2 contract unless the limitation is unconscionable.").  It certainly does not bar a software company from limiting its liability in a "clickwrap" license agreement that a purchaser must agree to before, as was the case here, installing the software.  *See, e.g.*, *I. Lan Sys., Inc. v. Netscout Serv. Level Corp.*, 183 F. Supp. 2d 328, 338 (D. Mass. 2002).

*Third*, Plaintiff's claims for punitive damages and attorney's fees should be disregarded in considering the amount-in-controversy calculation because they are prohibited as a matter of state law.  Federal courts in this circuit routinely refuse to include claims for punitive damages as part of the amount in controversy when a plaintiff under state law has no claim to them.  *See, e.g.*, *Giannette v. Boucher*, 981 F.2d 1245 (1st Cir. 1992) (unpublished table decision); *D'Amato v. R.I. Hosp. Trust Nat'l Bank*, 958 F.2d 361 (1st Cir. 1992) (unpublished table decision); *Davenport v. Whitehill*, No. 11-12071, 2012 U.S. Dist. LEXIS 13316, at *4 (D. Mass. Feb. 2,

8

2012); *Skillman v. Suffolk Jewelers & Pawnbrokers*, No. 10-11407, 2010 U.S. Dist. LEXIS 129559, at *12 (D. Mass. Dec. 7, 2010). This Court must do likewise.

Under Massachusetts law, "[p]unitive damages are not allowed . . . unless expressly authorized by statute." *Flesner v. Tech. Comm'cns Corp.*, 575 N.E.2d 1107, 1112 (Mass. 1991). No statute, however, authorizes such damages for any of Plaintiff's claims. Plaintiff's claims for breach of express warranty (Count 1), breach of contract (Count 4), and breach of the implied covenant of good faith and fair dealing (Count 5) all face the same bar: in Massachusetts, "[t]here are no punitive damages in contract." *DeRose v. Putnam Mgmt. Co.*, 496 N.E.2d 428, 432 (Mass. 1986); *see also Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng'rs, Inc.*, 489 N.E.2d 172, 175 (Mass. 1986) ("an express warranty claim is and generally has been understood to be an action of contract"); *Jennings v. Nathanson*, 404 F. Supp. 2d 380, 399 (D. Mass. 2005) ("Claims based on breach of the implied covenant of good faith and fair dealing sound in contract . . . ."). Likewise, Massachusetts law does not allow punitive damages for the claims of breach of the implied warranty of merchantability (Count 2) or fraudulent inducement (Count 3). *See Geshke v. Crocs, Inc.*, 889 F. Supp. 2d 253, 265 n.25 (D. Mass. 2012) (the statute governing "breach of an implied warranty, Mass. Gen. Laws ch. 106, § 2-314, does not authorize an award of punitive damages"); *N.E. Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*, No. 83-1179, 1991 U.S. Dist. LEXIS 17423, at *3 (D. Mass. Nov. 29, 1991) ("Under Massachusetts law, punitive damages [are not] an available remedy for the tort of fraudulent inducement."). And, of course, Plaintiff's claim for unjust enrichment cannot entitle Plaintiff to punitive damages because unjust enrichment is not even a cause of action, but instead an equitable remedy that can

only return the "benefit conferred on the defendant"—and nothing more. *See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 66 (1st Cir. 2009).[5]

Neither may Plaintiff rely on her claim for attorney's fees to get her over the jurisdictional threshold. "As a general matter, attorney's fees do not constitute part of the matter in controversy because the successful party typically does not collect his attorney's fees." *World Boxing Ass'n*, 942 F.2d at 89. There are only two exceptions to this rule: "one, where the fees are provided for by contract, and, two, where a statute mandates or allows the payment of such fees." *Id.* Neither circumstance is presented here, but even if they were, Plaintiff offers no allegation in the Complaint that her attorney's fees would (or even could) top two million dollars, as they must if she were to meet the amount-in-controversy requirement. *See, e.g.*, *Baker v. Equity Residential Mgmt., L.L.C.*, No. 13-12217, 2014 U.S. Dist. LEXIS 18469, at *19 (D. Mass. Feb. 12, 2014) (dismissal proper where proponent of jurisdiction has "not alleged any facts—let alone facts 'with sufficient particularity'—to justify speculation that an award of attorney's fees would bring the amount in controversy over the jurisdictional threshold amount of $5 million.").

In short, there is simply not five million dollars at stake in this case. In CAFA, Congress declared that federal jurisdiction would be reserved only for major class actions with much more money at stake. Plaintiff has not pled—and indeed cannot plead—damages totaling the jurisdictional minimum. Accordingly, the Court must dismiss this case. *See* Fed. R. Civ. P. 12(h)(3).

---

[5] Moreover, it bears repeating that the plain terms of the RPC Software License preclude any claims for punitive damages. (*See* RPC Software License ¶ 7 ("In no event will Capital Intellect be liable for any damages in excess of the list price Capital Intellect charges for a license to this software.").)

## B. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO RE-FILE.

While a plaintiff may normally respond to a Rule 12(b)(1) motion by amending her complaint, *see Spielman*, 251 F.3d at 5, Plaintiff should not be permitted to do so here. Rule 15, in these circumstances, does not permit Plaintiff to amend her Complaint as of right. To the contrary, the Court should not allow Plaintiff leave to re-file because she has already had two chances to plead federal jurisdiction, and because she declined to take any action even when presented with affirmative evidence that this Court lacks subject-matter jurisdiction.

This case is in a peculiar position because Plaintiff has gamed the federal rules. On the one hand, when the court in *Bilodeau I* ruled on the motion to dismiss before it, Plaintiff had already lost the ability to amend as of right under Rule 15(a)(1). In fact, in its order dismissing the case without prejudice, the court ordered Plaintiff not to "add new causes of action or parties without leave of the [c]ourt or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15." *Bilodeau I*, 2013 U.S. Dist. LEXIS 89226, at *44, slip op. at 21. Rather than comply with these instructions, however, Plaintiff voluntarily dismissed her case under Rule 41(a)(1) *after Judge Koh's Order entered*. She then revised her Complaint and brought it to a new forum, all without Judge Koh's permission.

Plaintiff should not be allowed to use Rule 41(a)(1) as a ploy to escape the limits of Rule 15(a) and Judge Koh's Order. Indeed, Plaintiff should be treated as having lost any right to amend as a matter of course by ignoring Judge Koh's order and voluntarily dismissing her suit. The proper course is thus to hold Plaintiff the standard of Rule 15(a)(2). And under that standard,

the Court has discretion to deny a motion when, as here, there has been "repeated failure to cure deficiencies." *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733 (1st Cir. 2007).[6]

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court enter an ORDER:

i. Dismissing this action with prejudice pursuant to Fed. R. Civ. P. 12(b)(1); and

ii. Awarding other such relief as the Court may deem to be right and just, including without limitation an award of attorneys' fees and costs associated with bringing this motion in circumstances where it is legally certain that jurisdiction does not exist.

Dated: May 1, 2014  
Boston, Massachusetts

Respectfully submitted,

CAPITAL INTELLECT, INC., d/b/a  
WINFERNO SOFTWARE, a Delaware corporation,

By its counsel,

/s/ Christopher M. Morrison  
Christopher M. Morrison (BBO #651335)  
JONES DAY  
100 High Street  
Boston, Massachusetts 02110  
(617) 960-3939  
cmorrison@jonesday.com

---

[6] Of course, a dismissal with prejudice under Rule 12(b)(1) would only be prejudicial to Plaintiff's right to bring another action in federal court. Plaintiff would still be free to pursue her claims in state court. *See, e.g.*, *Torres-Fuentes v. Motorambar, Inc.*, 396 F.3d 474, 475 (1st Cir. 2005).

## Certificate of Compliance with L.R.7.1(a)(2)

I, Christopher M. Morrison, hereby certify that I have conferred with Attorney Benjamin Richman, counsel for the plaintiff, in good faith to resolve or narrow the issues presented in this memorandum.

Specifically, I spoke with Mr. Richman several times since the filing of the Complaint, and informed him of the low volume of sales of RPC licenses. At Mr. Richman's request, I sent him a copy of Winferno's sales data, a recent balance sheet, and an affidavit from Jon Lal, Winferno's president and sole shareholder, attesting to the limited nature of the sales of the RPC software. Mr. Richman, however, refused to dismiss this action despite the obvious fact that the amount in controversy falls well below the $5,000,000 threshold.

/s/ Christopher M. Morrison
Christopher M. Morrison

## CERTIFICATE OF SERVICE

I, Christopher M. Morrison, hereby certify that a true copy of the foregoing document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on May 1, 2014.

/s/ Christopher M. Morrison
Christopher M. Morrison